UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Kenneth Hopkins

    v.                                Civil No. 06-cv-96-JD

Jane Coplan, et al.


O R D E R

Kenneth Hopkins, who is incarcerated at the New Hampshire State Prison, alleges federal and state claims against employees of the prison.  The defendants move for summary judgment on the grounds that Hopkins did not exhaust his available administrative remedies as required under 42 U.S.C. § 1997e, that evidence is lacking to support his Eighth Amendment claim against defendant Craig Edsall, that he failed to state any claim against three of the defendants, and that he cannot prove libel.  Hopkins objects to summary judgment.


Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate

the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255

## Background[1]

Hopkins was an informant during an internal investigation of staff misconduct at the prison in 1992. He contends that prison staff were fired as a result of the investigation and that although he was promised anonymity, the staff was aware of his participation in the investigation. He also contends that after the investigation and firings, he was moved away from the New Hampshire State Prison to protect him from the staff and spent six years in a Massachusetts prison. He was transferred back to

---

[1] The defendants present Hopkins's allegations from his complaint as the pertinent "facts" for summary judgment, along with references to testimony given by Corrections Officers Christopher Turcotte and Craig Edsall during a preliminary injunction hearing in February of 2004 and an affidavit from legal counsel for the Department of Corrections, showing that Hopkins did not file grievances on the subjects alleged in his complaint between 1995 and June of 2004. Cf. Fed. R. Civ. P. 56(e). Hopkins filed his affidavit to support his version of events.

the New Hampshire State Prison in October of 1998.

Hopkins contends that false disciplinary reports were lodged against him beginning when he returned to the New Hampshire State Prison. In December of 2001, Hopkins states, Corrections Officer Christopher Turcotte moved him to a cellblock with more aggressive inmates without justification. He complained to the prisoner counselor, the unit manager, and other corrections officers about being placed in that cellblock. When he asked Corrections Officer Paul LaFlamme about being moved back to his previous cellblock, Hopkins states that LaFlamme forced him to confront Turcotte with his request and then LaFlamme supported Turcotte's decision despite acknowledging that there was no reason for him to have been moved. A few minutes after that meeting, Hopkins's cellmate was called to the office. When that cellmate returned to the cell, he screamed that Hopkins was a "rat" who had reported that the cellmate had been bullying, harassing, and extorting from other inmates. Turcotte testified that he did not remember those circumstances.

On January 5, 2002, an altercation occurred involving the cellmate, Hopkins, and others. Hopkins was severely beaten and sustained serious injuries. On January 11, 2002, Corrections Officer Leitner wrote a disciplinary report for the January 5 incident, charging Hopkins with being involved in a one-on-one

fight.  Hopkins pled not guilty to the charge.  He contends that the hearing on January 14 was a sham and that Corrections Officers Thibeault and Morin knew that he had not been involved in a one-on-one fight but instead that he had been beaten by several inmates.  He was found guilty of fighting and required to pay for his own medical expenses.  Hopkins appealed the guilty finding to Major Shaw and then to the Warden and, after receiving no response, he appealed to the Commissioner and again received no response.

As a result of the beating, Hopkins had facial bruising, a broken wrist, blurred vision, and post-concussion symptoms.  He visited the prison infirmary several times.  Hopkins states that on February 5, 2002, Dr. David Friedman, a physician working at the prison, accused him of being a whiner and refused to see him. On April 2, Hopkins was admitted to the prison infirmary for observation because of neurological symptoms.  He underwent emergency brain surgery on April 4 after a CT scan showed a subdural hematoma.

On December 3, 2003, Corrections Officer Dunnack moved Hopkins to the Special Housing Unit ("SHU").  Hopkins states that soon after he arrived he began experiencing abdominal pain and asked Officer Edsall to call a nurse.  Hopkins states that Edsall watched him writhe in pain but refused to call a nurse.  Edsall

testified at a prior hearing that Hopkins complained of a stomach ache around 3:30 p.m. and asked to see a nurse. Edsall said that he notified the sergeant when Hopkins became agitated and was told that the nurse would come at normal sick call between five and six p.m.

They agree that the nurse came during normal sick call, which Hopkins says was around six p.m. Edsall said that he did not see Hopkins again until the nurse arrived when Hopkins was doubled over and his demeanor was different than at the time of his initial complaint of a stomach ache. They agree that Hopkins was immediately taken to the infirmary. Hopkins states that he had to be catheterized to remove 1100 cc of urine, which was the cause of his pain. He was then hospitalized outside of the prison for two weeks.

In January of 2004, Hopkins brought suit against the prison employees and officials involved in the events he alleges here. In March, the court granted the defendants' motion for summary judgment, concluding that Hopkins had not exhausted his administrative remedies as required under 42 U.S.C. § 1997e(a). With the assistance of counsel, on May 27, 2005, Hopkins filed a grievance to address the issues he raised in his federal complaint, along with more recent issues. The unit manager responded that he was "not sure what your request is." Hopkins

appealed to the Warden, who responded "[m]ost of the issues in your grievance are very old, some more than 10 years.  As these are certainly beyond the grievance time frames and most cannot be specifically verified, I assume you included them for a historical perspective from your point of view."  Def. Ex. E at 5.  The Warden then addressed the issue that he deemed to be timely which was "your claim that you are inappropriately housed on the second floor of the Hancock Building due to your medical condition and in violation of a written medical directive from Dr. Englander."  Id.  The Warden referred that issue to the prison medical department, and Nurse Timulty reported that Hopkins's records showed no urgent need for a lower level but suggested that he be moved to the prison in Berlin, which is on one floor.  That decision was appealed to the Commissioner, and in response Hopkins was notified that "[n]either the Warden nor this office will interfere with medical decisions."  Id. at 2.

On February 27, 2006, Hopkins moved for leave to file an amended complaint in his original federal suit, which was denied. Instead, the proposed complaint was docketed as a new complaint, which initiated this suit.

## Discussion

As stated in his objection to the motion for summary judgment, Hopkins alleges that Officer Turcotte retaliated against him in violation of the First Amendment because he had helped in an investigation of misconduct by prison staff in 1992. He alleges that Officers Leitner, Thibeault, and Morin retaliated against him, in violation of the First Amendment, by writing and approving a false disciplinary report against him and denying his requests to obtain evidence in his defense. He alleges that certain prison administrators and officials were aware of the retaliation against him and failed to take reasonable measures to insure his safety in violation of the Eighth Amendment. He also alleges that Officer Edsall violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. He brings state law libel claims against Corrections Officers Topham and Turcotte, contending that they falsely told another inmate that Hopkins was a "rat." He alleges a state law claim against Dr. David Friedman, contending that he violated his duty to exercise due care in treating Hopkins's injuries.

Incarcerated litigants are required by the Prison Litigation Reform Act to exhaust administrative remedies that are available before filing a federal action challenging prison conditions. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002).

Exhaustion is mandatory, even when the relief sought by the prisoner is not available through the administrative process. Booth v. Churner, 532 U.S. 731, 734-739 (2001).  In addition, § 1997e(a) requires proper exhaustion, meaning that a prisoner must satisfy all of the grievance process's procedural requirements. Woodford v. Ngo, 126 S. Ct. 2378, 2387-88 (2006).

In his previous federal case, Kenneth Hopkins v. Jane Coplan, et al., Civil No. 04-30-SM,, the court held that Hopkins's informal complaints about the beating incident on January 5, 2002, and his appeals of the disciplinary process did not satisfy the requirements of § 1997e(a).  See Op. No. 2005 DNH 038 (D.N.H. Mar. 16, 2005), docket no. 76.  Hopkins did not appeal that decision.  Instead, he filed an amended complaint in that case, after judgment was entered, that was docketed as a new case, nunc pro tunc.  Hopkins's renewed argument here, that his objections and appeals in the disciplinary proceeding complied with § 1997e(a), directly contradicts the prior order and is barred by res judicata.  See Maher v. GSI Lumonics, Inc., 433 F.3d 123, 126 (1st Cir. 2005) ("Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action.").

Alternatively, Hopkins contends that his grievance filed in

8

May of 2005 and then appealed to the Warden and the Commissioner satisfies § 1997e(a). He argues that because no time limit for filing grievances existed in December of 2001 and January of 2002, his grievance as to claims arising from the beating incident and the subsequent disciplinary process are not subject to the time restrictions that were added in October of 2002. He also argues that the defendants waived the affirmative defense of § 1997e(a) by responding to the merits of his grievance without asserting that it was untimely.

The defendants rely on New Hampshire Department of Corrections Policy and Procedure Directive ("PPD") 1.16 and have provided a copy in support of their motion for summary judgment. The defendants represent that PPD 1.16 was amended, effective October 1, 2002, to add a thirty-day time limit for filing grievances.[2] Pursuant to PPD 1.16,III,G, Hopkins was required to file grievances based on any incidents that occurred prior to October 1, 2002, within thirty days of that date. As of the

---

[2] The copy of PPD 1.16 provided by the defendants shows that its effective date was April 1, 2005, and also shows that it is "DATED" October 1, 2002. Hopkins, however, does not dispute that the effective date of the thirty-day time deadline was October 1, 2002, and the court has previously noted that date. See LaFauci v. N.H. Dep't of Corrs., et al., Civil No. 99-cv-597-PB, 2005 DNH 029 *20 n.9 (D.N.H. Feb. 23, 2005). Even if the effective date of the deadlines were April 1, 2005, however, Hopkins's grievance was filed more than thirty days after that date.

9

October 1, 2002, amendments, the deadlines imposed by PPD 1.16 were mandatory.  PPD 1.16,IV,E.

Hopkins does not address the time limit imposed on claims existing as of October 1, 2002, or dispute that claims based on incidents after October 1, 2002, are barred by the time limit. Therefore, Hopkins's grievance, filed on May 23, 2005, was untimely and does not satisfy the requirements of § 1997e(a).

Alternatively, Hopkins argues that the defendants waived the affirmative defense provided by § 1997e(a) by responding to his May 2005 grievance on the merits.  Hopkins is correct that exhaustion, as required by § 1997e(a), is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 921 (2007); Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006).  Courts have held that as an affirmative defense exhaustion may be waived under certain circumstances.  See Johnson v. Testman, 380 F.3d 691, 695 (2d Cir. 2004).

In this case, however, Hopkins has not shown that the defendants waived the exhaustion requirement by responding to his May 2005 grievance on its merits.  The complaint that supported that grievance included the claims at issue in this case but also included a myriad of other grievances including an issue that had arisen that month as to whether Hopkins's medical condition required that he be housed where he did not have to use stairs.

10

The initial response from the unit manager said only that he did not understand Hopkins's request.  The Warden stated that except for complaints about being housed on the second floor, Hopkins's complaint was not timely.  The Commissioner responded to the Warden's decision about Hopkins's medical need for special housing.  As such, none of the responses addressed any of the issues that are the bases for Hopkins's claims in this case.

Because Hopkins did not exhaust his claims through the prison procedure in a timely manner, he has not satisfied the requirements of § 1997e(a).  Therefore, the defendants are entitled to summary judgment on all claims.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 10) is granted.  The clerk of court shall enter judgment in favor of the defendants on the ground that the plaintiff failed to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a) and close the case.


SO ORDERED.

<u>/s/Joseph A.DiClerico, Jr.</u>
Joseph A. DiClerico, Jr.
United States District Judge

August   6, 2007

cc:  Michael J. Sheehan, Esq.
     Andrew B. Livernois, Esq.